**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

TINA LUMAE MORRIS,

    Plaintiff,

vs.                                                                 CASE NO. 3:10-cv-575-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____

**ORDER AND OPINION**

This case is before the Court on Plaintiff's complaint (Docs. #1), seeking review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying Plaintiff's claim for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by the Order of Reference dated January 11, 2011 (Doc. #13). The Commissioner has filed a transcript of the underlying administrative proceedings and evidentiary record (hereinafter referred to as "Tr." followed by the appropriate page number).

Upon review of the record, the Court has found the issue raised by Plaintiff was fully briefed and determined oral argument would not benefit the Court in making its determination. Accordingly, the matter has been decided on the written record. For the reasons set out herein, the Commissioner's decision is **AFFIRMED**.

**I. PROCEDURAL HISTORY**

In the instant action, Plaintiff protectively filed an application for disability insurance benefits ("DIB") and social security income ("SSI") on November 3, 2005, with an alleged onset date of March 27, 2002. (Tr. 12).[1] Plaintiff's application was denied initially on February 23, 2006, and upon reconsideration on July 18, 2006. (Tr. 68, 73). Plaintiff requested an administrative hearing, which was held on January 8, 2008, in Jacksonville, Florida. (Tr. 476). The administrative law judge ("ALJ") issued a decision denying Plaintiff's claim on April 24, 2008. (Tr. 9-20). Plaintiff filed a request for the review, which the Appeals Council denied on April 30, 2010. (Tr. 5). Plaintiff's current counsel of record L. Jack Gibney, Esquire, filed the instant action in federal court on July 2, 2010, requesting that this Court reverse and set aside the decision of the Commissioner, or remand for a *de novo* hearing (Doc. #1).

**II. BACKGROUND**

**A. Summary of Evidence Before the ALJ**

Plaintiff was born on July 3, 1973, and was thirty-four years of age at the time of the ALJ's decision. (Tr. 78). Plaintiff completed the seventh grade (Tr. 514-15), and has past relevant work experience as a housekeeper, photographer, and truck driver (Tr. 121). Plaintiff's medical history was discussed in the ALJ's decision and will be summarized herein.

---

[1] Plaintiff previously filed applications for disability benefits, which were denied on July 28, 2005 (Tr. 12). Due to considerations of *res judicata*, Plaintiff's disability status for DIB was considered from July 29, 2005 through the date last insured, March 31, 2006. (Tr. 13). Plaintiff's disability status for SSI was considered from July 29, 2005 through the date of the administrative hearing. *Id.*

### i. Medical Evidence

Following the denial of benefits on July 28, 2005 from Plaintiff's previous applications for disability (Tr. 476-77), Plaintiff made multiple visits complaining of back pain and, occasionally, hip pain between September of 2005 and March of 2006. (Tr. 238-43, 220). On March 30, 2006, Plaintiff visited Shands Hospital complaining of severe pain in her right hand, where doctors examined her hand, determined the hand was fractured, and placed in an ulnar gutter cast. (Tr. 221-28). Subsequent visits on April, 5 and April 7 of 2006, revealed a chief complaint of hand and back pain, where medications were prescribed and/or updated for pain management. (Tr. 228, 231). Plaintiff continued to visit Shands for follow-up visits regarding her hand fracture and for medication refills; at most of these visits Plaintiff complained of pain in her back and hand. (Tr. 228, 231, 358-367). On June 23, 2006, Plaintiff visited Shands, where Dr. Puckett determined that Plaintiff's fracture had healed, but that Plaintiff suffered decreased range of motion due to the pain in Plaintiff's hand. (Tr. 362). On August 11, 2006, Plaintiff visited Dr. Puckett, where he determined that Plaintiff's hand had healed and returned to a normal range of motion. (Tr. 358).

Plaintiff continued to visit Shands Hospital for back, neck, and hand pain complaints through 2007. (Tr. 330-81). During these visits, Plaintiff also complained of depression at times. On March 2, 2007, Plaintiff reported periods of feeling down about her disease; she was not suicidal but occasionally experienced crying spells and was critical of herself. (Tr. 355). Dr. Kane assessed Plaintiff with chronic lower back pain, reactive airway disease, cervical spondylosis and "mild intermittent depression." *Id.* During Plaintiff's April 4, 2007 visit, she complained of back, neck and hand pain, and also reported she had injured her right eye. (Tr. 352-53, 380). Dr. Andrew Kane noted Plaintiff's depressive thoughts, and

her plan to apply for social security. (Tr. 380).

Dr. Kane conducted counseling sessions with Plaintiff on the following dates: August 28, 2007; September 17, 2007; October 8, 2007; October 24, 2007; November 14, 2007; December 4, 2007; and December 26, 2007. (Tr. 315-16, 318-24). The record reflects only the hand written notes of Dr. Kane, which are nearly illegible but appear to reference Plaintiff's depressed mood, a finding that Plaintiff's affect was appropriate, and a diagnosis of chronic pain and depression. (Tr. 318-24).

On November 7, 2007, Dr. Kane prepared a letter detailing his opinion. (Tr.315-16). Dr. Kane reported Plaintiff had been involved in a severe motor vehicle accident that required surgery on her cervical spine and resulted in recurrent headaches, chronic neck and shoulder pain, and low back pain. *Id.* Dr. Kane reported there has been no significant change in Plaintiff's chronic pain conditions since September 2003. *Id.* Dr. Kane noted Plaintiff's neck, shoulder and back pain is persistent "but on occasion increases in severity." *Id.* He noted Plaintiff has limitation of motion in her neck. *Id.* He stated, "Extremes of movement are painful. Otherwise she does not manifest any motor or sensory deficits in her extremities." *Id.* Plaintiff experiences no motor or sensory changes in her lower back, which shows good range of motion when not causing her pain. *Id.* Dr. Kane reported Plaintiff experiences muscle spasms in her lower back and neck, but without evidence of nerve impingement. *Id.* He reported Plaintiff's pain exacerbates with minimal to moderate physical exertion or emotional stress, and sometimes spontaneously increases. *Id.* Dr. Kane also noted that Plaintiff became "intermittently depressed about her situation and has sought counseling and medication for this with some success." *Id.* Dr. Kane concluded,

> [Plaintiff's] condition has been unchanged over the last

> four years and I think she has reached her maximal medical improvement at this time. On her 'good days' I think she is capable of sedentary work. However, she has frequent exacerbations of the acute pain, either from neck spasms or back spasms, from headaches, or exacerbations of her depression, and as a result I think she is disabled from any kind of employment.

*Id.*

Six consulting opinions were provided on Plaintiff's claim: (1) Dr. Lauren Lucas, Ph.D., an examining consultant, conducted an in-person psychiatric review on April 8, 2003 (Tr.311-13); (2) Dr. Steven Wise, Psy.D., a non-examining consultant, completed a Psychiatric Review Technique ("PRT") on May 29, 2003 (Tr. 145-58); (3) Dr. Clinton Hatcher, a non-examining consultant, completed a Physical Residual Functional Capacity ("RFC") Assessment on February 16, 2006 (Tr. 195-202); (3) Dr. Michael Zelenka, Ph.D., a non-examining consultant, completed a PRT on February 17, 2006 (Tr. 203-16); (4) Dr. Steven Wise, Psy.D., completed an updated PRT on June 15, 2006 (Tr. 289-302); and (5) Dr. Audrey Goodpasture, M.D., a non-examining consultant, completed a Physical RFC Assessment on June 27, 2006 (Tr. 303-10).

On April 8, 2003 Dr. Lucas, a licensed psychologist, performed an in-person psychiatric evaluation of Plaintiff. (Tr. 311-13). Dr. Lucas noted Plaintiff's affect was flat, her mood tone was dysphoric, and she experienced breakthrough weeping. (Tr. 312). Plaintiff described her mood as depressed. *Id.* Plaintiff's insight was poor and judgment fair. *Id.* Dr. Lucas' impression was "[m]ajor depression, moderate." *Id.* Dr. Lucas opined Plaintiff was "probably psychologically competent to manage her own benefits. . . [Plaintiff] is probably not psychologically competent to perform a routine repetitive task and to appreciate the need for appropriate relations among co-workers and supervisors." *Id.*

5

Dr. Wise's April 8, 2003 PRT evaluated Plaintiff's Affective Disorder and found mild restriction of activities of daily living; mild difficulties in maintaining social functioning; difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. 155). Dr. Wise noted Plaintiff's restrictions appear physical and not mental and the record does not suggest severe depression. (Tr. 157).

Dr. Hatcher's February 16, 2006 RFC Assessment asserted Plaintiff can: (1) occasionally lift or carry up to twenty pounds; (2) frequently lift or carry up to ten pounds; (3) stand or walk about six hours, with normal breaks, during an eight hour workday; (4) sit for a total of six hours, with normal breaks, during an eight hour workday; and (5) an has unlimited push or pull. (Tr. 196). Mr. Hatcher also determined that Plaintiff is occasionally limited in her ability to: climb ramps, stairs, ladders, ropes, and scaffolds; balance; stoop; kneel; crouch; and crawl. (Tr. 197). Dr. Hatcher expressed, "Symptoms are attributable to a medically determinable impairment, however, severity appears to be disproportionate to the expected severity based upon the total medical and non-medical evidence." (Tr. 200).

Dr. Zelenka's February 17, 2006 PRT noted Plaintiff suffered from adjustment disorder (Tr. 206, 203), but found no limitations on activities of daily living; maintaining social function; or concentration, persistence, or pace; and no episodes of decompensation. (Tr. 213). Dr. Zelenka noted there has been no formal mental treatment and concluded her adjustment disorder was not severe. (Tr. 215). He stated, "Evidence indicates [Plaintiff] has an Adj Disorder with anxiety and depression, in fair to good remission with Rx; she has no significant mental limitations." *Id.*

Dr. Wise's June 15, 2006 PRT noted Plaintiff suffered from an affective disorder not

otherwise specified and there were no mental deficits with treatment. (Tr. 292). Dr. Wise found no limitations on activities of daily living; maintaining social function; or concentration, persistence, or pace; and no episodes of decompensation. (Tr. 299). Dr. Wise noted Plaintiff's progress notes from Shands were "benign from a mental perspective" and her activities of daily living were intact from a mental viewpoint. (Tr. 301). He concluded Plaintiff had no functional mental deficits with medication. *Id.*

The limitations expressed in Dr. Goodpasture's June 27, 2006 RFC assessment match that of Dr. Hatcher (Tr. 303-10) with the following exceptions: Plaintiff can never climb ladders, ropes, or scaffolds (Tr. 305); Plaintiff's manipulative limitations were limited in her ability to reach in all directions (Tr. 306); Plaintiff's environmental limitations were to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery and heights (Tr. 307). Dr. Goodpasture noted Plaintiff's lower back pain etiology is not clear. (Tr. 308).

### ii. Plaintiff's Testimony

Plaintiff testified before ALJ Calvarese on January 8, 2008 (Tr. 474). The ALJ prefaced his inquiries by stating he would only consider information from July 29, 2005 through March 31, 2006 for purposes of deciding Plaintiff's eligibility for DIB, and from July 29, 2005 through the date of the hearing for the purposes of deciding Plaintiff's eligibility for SSI. (Tr. 476-77). The ALJ explained this limitation was due to the doctrine of *res judicata, as* another ALJ had rendered an unfavorable decision with regard to Plaintiff's previous claims for DIB and SSI on July 28, 2005. *Id.*

Plaintiff, via questioning from her attorney, testified as to her accident in 2002 and the subsequent treatments she received (Tr. 484-91). Plaintiff testified, and the ALJ

recounted, the medications which the Plaintiff was prescribed and taking at the time of the hearing. *Id.*

The ALJ inquired as to Plaintiff's daily activities, where Plaintiff stated she could: (1) brush her teeth; (2) comb part of her hair, but could not reach behind her to comb the back of her hair; (3) shower with the assistance of others, because she could not bend and reach areas of her body such as her legs; (4) not drive because the medications affected her mental cognition; (5) not conduct grocery shopping; and (5) not climb stairs because her legs "give out" on her. (Tr. 491-98). Plaintiff also testified that she could lift and pour a thirty-two ounce water jug. (Tr. 503). Plaintiff stated that she could not walk fifty yards, but could probably walk up to ten yards before her legs would start trembling as they do when she walks from the car to her front door. (Tr. 505-06). Plaintiff testified that Dr. Kane prescribed a cane to assist Plaintiff in her ability to walk following the car accident in 2002. (Tr. 506).

Plaintiff stated she suffered from depression, and wrote in a journal as a form of therapy. (Tr. 496). Plaintiff stated that she sees Dr. Kane, her treating physician, once a month for psychiatric counseling sessions to treat her depression. (Tr. 507-08). Plaintiff testified she cries a lot. (Tr. 508). Plaintiff testified to sleeping on and off for most of the day, and stated she has an inability to focus on, or lack of interest in, watching television. (Tr. 504-05). Plaintiff testified she does not maintain any hobbies. (Tr. 505-06).

**B. Summary of the ALJ's Decision**

A plaintiff may be entitled to disability benefits under the Social Security Act if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death

or last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920;[2] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). A plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

In the instant case, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 29, 2005, the beginning of the time period under consideration. (Tr. 14). At step two, the ALJ found Plaintiff suffered from the severe impairments of status post cervical fusion and asthma. *Id.* At step three, the ALJ

---

[2] All references made to 20 C.F.R. will be to the 2010 edition unless otherwise specified. As the Regulations for SSI disability payments mirror those set forth for DIB on the matters presented in this case, from this point forward the Court may refer only to those sections in 20 C.F.R. pertaining to part 404 and disability insurance benefits.

determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404 Subpt. P. (Tr. 15). At step four, the ALJ found Plaintiff retained the residual functional capacity ("RFC")

> to perform light work,[3] except she can only occasionally climb stairs or ramps, must never climb ladders or scaffolds and can only perform overhead work on an occasional basis. Further, claimant cannot be exposed to concentrated levels of dust, fumes or other pulmonary irritants, and she must avoid exposure to work place hazards such as open machinery.

*Id.* The ALJ then found Plaintiff able to perform her past relevant work as a still photographer. (Tr. 19). Therefore, the ALJ found Plaintiff was not under a disability from March 27, 2002, the alleged onset date, through the date of his decision. *Id.*

### III. STANDARD OF REVIEW

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir.

---

[3] Light work involves lifting no more than twenty (20) pounds at a time with frequent lifting or carrying of objects weighing up to ten (10) pounds. 20 C.F.R. § 404.1567(b). A job in the light work category may still require a good deal of walking or standing, or it may involve sitting most of the time with some pushing and pulling of arm or leg controls. *Id.* To be considered capable of performing a full or wide range of light work, a plaintiff must have the ability to do substantially all of the aforementioned activities. *Id.*

1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, a plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the

Commissioner of Social Security may require."). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

## IV.  ANALYSIS

Plaintiff raises two arguments on appeal. First, she argues the ALJ erred by improperly discounting the opinions of her treating physician, Dr. Kane.  Second, Plaintiff argues the ALJ erred by not properly evaluating Plaintiff's mental impairment. The Court will consider each argument in turn.

**A. Proper Weight to Treating Physician**

The Regulations provide that, generally, more weight should be given to the opinion of a source who has examined a claimant than to the opinion of a non-examining source. 20 C.F.R. § 404.1527(d).  The Regulations further instruct ALJs with respect to properly weighing the medical opinions of treating physicians.  The Regulations provide, in pertinent part, as follows:

> Generally, we give more weight to opinions from [a plaintiff's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2).

Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a plaintiff's] medical impairment(s)," a treating physician's medical opinion is due to be afforded great weight if it is well supported by

12

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). Important to the determination of whether there is a "detailed, longitudinal picture" of a claimant's impairments is the length of the treatment relationship,[4] the frequency of examination, the knowledge of the treating source as shown by the nature and extent of the treatment relationship, the evidence and explanation presented by the treating source to support his or her opinion, the consistency of the opinion with the record as a whole, and the specialization of the physician. 20 C.F.R. § 404.1527(d)(2)–(5).

In addition, it is well established in the Eleventh Circuit that, generally, substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is "good cause" to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). The Eleventh Circuit has concluded "good cause" exists when a treating physician's opinion is: (1) not bolstered by the evidence; (2) contrary to the evidence; or (3) inconsistent with the treating physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440. "Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence," a reviewing court cannot "disturb the ALJ's refusal to give the opinion controlling

---

[4] Generally, the longer a treating source has treated a claimant and the more times a claimant has been seen by a treating source, the more weight that should be given to that source's medical opinion. 20 C.F.R. § 404.1527(d)(2)(i).

weight." *Carson v. Comm'r of Soc. Sec.*, 2008 WL 4962696 at *1 (11th Cir. Nov. 21, 2008).[5]

In the instant case, the ALJ gave "limited weight" to Dr. Kane's opinion. (Tr. 18). The ALJ identified several reasons for discounting Dr. Kane's opinion: (1) Dr. Kane did not identify specific work-related limitations; (2) he did not identify what level of exertion or movement caused Plaintiff's symptoms to flare; and (3) he did not identify "specific work related factors that would trigger or aggravate the limiting effects of the Plaintiff's symptoms, work related activities that she can and can not perform, the number of days she can be expected to have bad days or good days, or other information necessary to analyze the claimant's claim." (Tr. 18-19). The ALJ also noted that Dr. Kane's opinion that Plaintiff was disabled was entitled to no weight because the ultimate decision of disability is reserved to the Commissioner. (Tr. 19).

The undersigned finds the ALJ provided sufficient reasons to discount the treating physicians opinion. The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *Edwards*, 937 F.2d at 583; *see also* 20 C.F.R. 404.1527(d)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."). A physician's summary of diagnoses which fails to explain specific work-related limitations is conclusory and may be properly discounted. *Martinez v. Astrue*, No. 8:08-cv-1134-T-TGW, 2009 WL 2163115, at *3 (M.D. Fla. July 20, 2009). Furthermore, the undersigned notes Dr. Kane's statement that Plaintiff's condition has remained "unchanged over the last

---

[5] Unpublished opinions may be cited throughout this order as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 32.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

four years" is particularly compelling in light of the fact that this indicates Plaintiff's condition has not worsened or changed significantly since July 28, 2005, when she was previously found by the Commissioner not to be disabled.

Plaintiff argues the ALJ failed to give substantial weight to Dr. Kane's opinion because he could not specifically point to the exact cause of Plaintiff's pain. Plaintiff argues the ALJ "made his own medical conclusion about whether the Plaintiff's pain is (1) treatable under a more aggressive approach and (2) less severe in its intensity and persistence because the pain is unidentifiable by the treating medical physician." (Doc. #11 at 11). However, Plaintiff's arguments mischaracterize the ALJ's findings. In discounting *Plaintiff's* credibility regarding the intensity and nature of her symptoms, the ALJ found Plaintiff's testimony was inconsistent with the medical evidence of record, and thereafter discussed the conservative nature of her treatment and the lack of objective medical findings.[6] However, as described above, these were not the reasons the ALJ found for discounting *Dr. Kane's* opinion. Rather, the ALJ properly discounted Dr. Kane's opinion because it was conclusory and did not identify work-related limitations caused by Plaintiff's pain.[7]

## B. Evaluation of Plaintiff's mental impairment

At Step Two of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. 20 C.F.R. § 404.1520(c). By definition, this inquiry is a threshold inquiry. "An impairment or combination of impairments is not severe

---

[6] The ALJ specifically noted Plaintiff's treatment was conservative in nature; there was no evidence of nerve impingement or other complications which would explain Plaintiff's pain; predictable triggers had not been discovered for Plaintiff's pain; and multiple neurologists, neurosurgeons, and pain specialists were unable to offer a solution to Plaintiff's symptoms after years of evaluation and treatment.

[7] Plaintiff does not appeal the ALJ's discrediting of her testimony, and the Court does not reach this issue.

if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). In this circuit, an impairment is not severe if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. A claimant need show only that his or her impairment is not so slight and its effect not so minimal. *McDaniel v. Bowen*, 800 F. 2d 1026, 1031 (11th Cir. 1986). The claimant has the burden of proving that he or she has severe physical or mental impairments. *See Bowen v. Yuckert*, 482 U.S. at 146 n.5.

Further, when evaluating a claim of disability based on a mental impairment, the Commissioner is required to follow a special procedure set out in 20 C.F.R. § 404.1520a. *See Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005). Section 404.1520a(b)(2) mandates that the Commissioner rate the degree of functional limitation resulting from the impairments in accordance with paragraph (c) of that section and must record the findings as set out in paragraph (e) of that section. Sub-paragraph (c)(4) requires the degree of limitation in the functional areas of daily living; social functioning; and concentration, persistence, or pace will be rated using a five-point scale of: "None, mild, moderate, marked, and extreme" and the degree of limitation in the fourth functional area (episodes of decompensation), be rated using the four-point scale of: "None, one or two, three, four or more." Section 404.1520a(e)(2) provides in pertinent part that "[a]t the administrative law judge hearing . . . the decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section."

In the instant case, although Plaintiff suffers from an affective mood disorder, the

ALJ found her mental impairment was nonsevere. (Tr. 15). The ALJ applied the Psychiatric Review Technique and found Plaintiff had no functional limitations on activities of daily living; maintaining social function; or concentration, persistence, or pace; and no episodes of decompensation. (Tr. 15). The ALJ then stated, "Because the claimant's medically determinable mental impairment causes no more than 'mild' limitation in any of the first three functional areas and 'no' limitation in the fourth area, it is nonsevere. (20 C.F.R. 404.1520a(d)(1) and 416.920a(d)(1))."

Based on the above, Plaintiff argues the ALJ's opinion is inherently inconsistent, because the ALJ found no limitations but then concluded there were mild limitations. However, contrary to Plaintiff's assertion, the ALJ was not concluding that Plaintiff had mild limitations in the first three functional areas. Rather, the ALJ was merely acknowledging the applicable regulations in support of his conclusion that Plaintiff's affective mood disorder did not cause "*even minimal limitation* in the claimant's ability to perform basic mental work activities" and was therefore not severe.[8] (Tr. 15) (emphasis added).

Plaintiff contends the ALJ ignored Dr. Lucas' report that Plaintiff was "probably not psychologically competent to perform a routine repetitive task and to appreciate the need for appropriate relations among co-workers and supervisors." (Tr. 312). Plaintiff contends the ALJ also ignored Dr. Wise's finding of mild limitations in the first three functional areas (Tr. 155) and Dr. Kane's note regarding the existence of Plaintiff's depression in his November 2007 letter (Tr. 315). However, the undersigned finds the ALJ's determination

---

[8] 20 C.F.R. 404.1520a(d)(1) states, "If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."

17

that Plaintiff's affective mood disorder was nonsevere is supported by substantial evidence.

First, Dr. Lucas' April 2003 report predates the relevant time period by more than two years. Because the Commissioner denied Plaintiff's previous applications on July 28, 2005, due to considerations of res judicata the ALJ only considered Plaintiff's disability status from July 29, 2005 onward. Thus, the ALJ did not need to specifically refute Dr. Lucas' opinion because it did not relate to the period under consideration. Moreover, Dr. Lucas' opinion that Plaintiff was "probably" not psychologically incompetent is equivocal.

Second, with regards to Plaintiff's citation to Dr. Wise's April 2003 PRT that identified mild limitations, the same considerations apply because this report similarly predates the relevant time period. Plaintiff also ignores the fact that Dr. Wise submitted an updated PRT in April 2006, which included no limitations and found Plaintiff suffered no functional mental deficits with treatment. (Tr. 301). Dr. Wise's more recent opinion is consistent with Dr. Zelenka's February 2006 PRT that also found no functional mental limitations and noted Plaintiff's mental conditions were in remission with treatment. (Tr. 213, 215).

Third, Dr. Kane's letter supports a finding of non-severity, as he noted Plaintiff became "intermittently depressed" about her situation, which was treated "with some success" by counseling and medication. (Tr. 315).

Although Plaintiff's mental health may have been impaired, she failed to show that her mental issues interfered with her ability to perform basic work activities. While Plaintiff was diagnosed with depression, a medical diagnosis does not necessarily denote a severe impairment under the Social Security Act, nor does it necessarily indicate a limitation on the ability to work. "A diagnosis alone is an insufficient basis for finding that an impairment

is severe. The severity of a medically ascertained impairment must be measured in terms of its effect upon ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normalty." *Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002) (citing *McCruter v. Bowen,* 791 F. 2d 1544, 1547 (11th Cir. 1986)). Moreover, Plaintiff's condition appeared to have been treated successfully with medication and counseling sessions. Accordingly, the ALJ's determination that Plaintiff's mental impairment does not cause any limitations in her ability to perform work activities is supported by substantial evidence.

## V. CONCLUSION

Upon due consideration, the undersigned finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. As neither reversal nor remand is warranted in this case, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file. Each party shall bear its own fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida, this 28th of September, 2011.

*Thomas E. Morris*
THOMAS E. MORRIS
United States Magistrate Judge

Copies to: All counsel of record
and *Pro se* parties, if any